**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

STEVEN CANNON,

    Plaintiff,

vs.   CASE NO. 3:10-cv-243-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

    This case is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claims for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") disability payments.  42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #17). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #18). Both parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to the undersigned by the Order of Reference dated April 28, 2011(Doc. #23). The Commissioner has filed the transcript of the administrative record (hereinafter referred to as "Tr." followed by the appropriate page number).  Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations.  Accordingly, the matter has been decided on the written record.

    For the reasons set out herein, the decision of the Commissioner is **REVERSED** and

the case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed applications for DIB and SSI on July 27, 2007 (Tr. 119-25), in which he asserts the onset date of disability was October 5, 2006. After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on May 26, 2009 in Jacksonville, Florida before Administrative Law Judge (ALJ) Robert Droker (Tr. 25-49).  During the hearing, Plaintiff appeared and testified in person, as did vocational expert (VE) Donna Mancini.  Plaintiff was represented during the underlying administrative phase of the proceedings by attorney William J. McLean (Tr. 60-63), but Ms. Frances Brooks, a non-attorney representative from Mr. McLean's law firm was actually present with Mr. Cannon at the administrative hearing (Tr. 25, 51).  On June 17, 2009, ALJ Droker issued a hearing decision denying Plaintiff's claim (Tr. 11-24).  The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (*see* Tr. 1-5).

The instant action was filed in federal court on August 25, 2009 (Doc. #1, Complaint) by Plaintiff's current counsel of record, Mr. N. Albert Bacharach, Jr., Esq.  The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

Plaintiff may be entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment,

which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 404.1505.[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520. Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ's decision dated June 17, 2009, denied Plaintiff's claim (Tr. 11-24). The ALJ found that Plaintiff met the insured status requirements through December 31, 2008 (Tr. 16). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 5, 2006 (Tr. 16). At step two, the ALJ found Plaintiff's disorders of the spine, psoriasis, affective disorder, and obesity were severe impairments (Tr. 16). At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 (Tr. 19).

The ALJ assessed Plaintiff retained the residual functional capacity ("RFC") to perform light work, with some restrictions (Tr. 20). At step four, the ALJ determined that Plaintiff could not perform the past relevant work, which was identified by the VE as that

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

of a construction worker II and a carpenter helper (Tr. 23).  However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform"  (Tr. 23).

Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date through the date of the decision (Tr. 24).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion.  *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done

so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh the evidence, but determines whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled under the Social Security Act.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

**BACKGROUND AND ANALYSIS**

Plaintiff was born on January 12, 1966 (Tr. 122-26).  Thus, he was forty-three years old at the time of the administrative hearing.  Plaintiff testified at the hearing that he completed the twelfth grade, but did not obtain any additional education or training beyond high school (Tr. 30).  Plaintiff has past relevant work experience as a handyman, a construction worker and a carpenter laborer/helper (Tr. 31, 45-46, 193-94).  He alleged a

5

disability onset date of October 5, 2006 (Tr. 31, 119).[2]  Plaintiff testified that he stopped working because he had a car accident on the alleged onset date of disability (Tr. 31; *also see* Tr. 144).  He further testified that he, "hit a mound of dirt that was in the middle of the dirt road and, with a car and jumped it" (Tr. 31).  In his Disability Report-Adult, Plaintiff alleged that he is limited in his ability to work due to bulging discs, fracture in the middle back, psoriasis, and continuous back pain (Tr. 144).

Plaintiff raises three issues on appeal (Doc. #17 at 1).  As stated by Plaintiff, the first issue is "whether the ALJ violated the treating physician[']s rule in rejecting the opinion of Dr. Yili Zhou, Plaintiff Cannon's treating physician, that his pain precludes all work."  *Id.*  Second, Plaintiff questions whether the ALJ violated the Eleventh Circuit "pain standard" when evaluating Plaintiff's pain testimony.  *Id.* at 1, 11-15.  Third, Plaintiff charges the ALJ "compounded the other errors by not posing hypothetical questions that included Cannon's non-exertional limitations."  *Id.* at 1, 16-19.

In general, Defendant asserts the Commissioner's decision that Plaintiff Cannon is not disabled under the Social Security Act is supported by substantial evidence (Doc. #18).  In particular, Defendant argues the ALJ properly discounted the weight given to the opinions from Dr. Zhou and properly discredited Cannon's pain testimony by correctly stating reasons that are supported by substantial evidence in the record.  *Id.* at 5-12.  Defendant further argues the ALJ adequately accounted for Cannon's non-exertional

---

[2]The Court notes that Plaintiff's testimony stated his alleged onset date was in October 2005, rather than 2006 (*see* Tr. 30-31).  Plaintiff's applications reference an alleged onset date of disability of October 5, 2006 (Tr. 119, 122).  Conflicts in evidence are to be resolved by the Commissioner, not the courts.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The Court's analysis in this case is not affected by the noted conflict.

limitations in Cannon's RFC and in the hypothetical questions asked of the vocational expert because the ALJ discredited Cannon's complaints of disabling pain and the ALJ limited Cannon to work that does not include "unusual stress." *Id.* at 13-14.

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error within Plaintiff's third issue. It is unclear whether the ALJ adequately accounted for Cannon's severe mental impairment in the assessed RFC and in the hypothetical questions posed to the vocational expert. The Court will limit its findings and analysis to this dispositive issue.

**Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Questions**

As noted earlier, the ALJ in this case found Plaintiff's disorders of the spine, psoriasis, affective disorder and obesity were severe impairments (Tr. 16).[3] By definition, a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Thus, the ALJ found Plaintiff had a severe mental impairment that affected his ability to work.

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique ("PRT"), that is set out at 20 C.F.R. § 404.1520a. Section 404.1520a (b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of

---

[3]Generally speaking, an affective disorder is a class of mental disorders that are characterized by a disturbance in mood. On-Line Medical Dictionary at http://www.medilexicon.com/medicaldictionary.php (last visited March 23, 2011).

daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more."  Section 404.1520a (e)(2) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

In this case, the ALJ found Cannon to have the severe impairment of an affective disorder.  The effects of an impairment are measured by the limitations on the ability to work.  The ALJ must consider a claimant's limitations on the ability to work when assessing the severity of an impairment.  *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe).  In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff Cannon's affective disorder caused no restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 20).

If the ALJ finds a claimant's impairment or combination of impairments to be severe, then the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 1520(d), 404.1525, 404.1526).  In this case, the ALJ found Cannon's affective disorder did "not meet or medically equal the criteria of listing 12.04" (Tr. 19).  In fact, the ALJ specifically found Plaintiff Cannon did not have an affective disorder with the required level of functional limitation under the "B" or "C" criteria

of the referenced mental listing (Tr. 20).

The four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe and from which the ALJ must determine the mental functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific determination. *Id.* Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The category of concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time limits. *Id.*

At the request of the Social Security Administration, Plaintiff Cannon was evaluated by Dr. Candace L. Valenstein, Ph.D., a clinical psychologist, on August 29, 2007 (Tr. 262-65). Dr. Valenstein diagnosed Plaintiff with an adjustment disorder with depressed mood,

and assessed a GAF score of 65, which indicates some mild symptoms.[4] *Id.* Dr. Valenstein found Plaintiff displayed a normal range of affect and did not appear to be clinically depressed or anxious. *Id.* Plaintiff Cannon was taking Elavil "to improve his mood and help him sleep" that was prescribed by Dr. Zhou, his treating pain management physician (Tr. 262; *also see* Tr. 308). Dr. Valenstein found Cannon's immediate, recent and remote memory was intact and he had the ability to follow basic work related instructions. *Id.* Overall, Dr. Valenstein's findings of Plaintiff's mental state were unremarkable, but her report does not address how Plaintiff would react to stress in the work environment, such as the completion of tasks under production quotas. *See id.*[5]

The First Circuit has recognized that "stress" in the workplace "is not a characteristic

---

[4]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

[5]The psychologists who reviewed Cannon's medical records at the request of the Social Security Administration found his mental impairments were not severe and resulted in either mild difficulties in the four broad areas of functioning or no difficulties in those areas (*see* Tr. 275–88, PRT completed on September 10, 2007; Tr. 358-37, PRT completed on January 23, 2008). ALJ Droker implicitly gave Cannon every benefit of doubt in finding his affective disorder results in moderate difficulties in maintaining concentration, persistence or pace (*see* Tr. 501, Disorders of the Spine Interrogatory form completed by Dr. Zhou on March 14, 2009, on which Dr. Zhou marked the box for "yes" in response to the question, "Does this patient's medication regimen cause side effects that could <u>REASONABLY</u> interfere with his ability to function in the workplace?" (emphasis in the original)).

of a job, but instead reflects an individual's subjective response to a particular situation." *Lancellotta v. Sec'y of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986). While the phrase "no unusual stress" may be somewhat vague, its use as a restriction on a plaintiff's ability to work is not necessarily fatal to an ALJ's decision finding a claimant is not disabled. *See Nelson v. Barnhart*, No. 06-C-249-C, 2006 WL 3042954 (W.D. Wis. Oct. 24, 2006) (finding the plaintiff's RFC and the hypothetical question asked of the vocation expert adequately accounted for the plaintiff's non-severe mental impairment with the inclusion of the restriction "no unusual stress"); *also see Lewis v. Astrue*, No. 1:09-cv-139-MP-AK, 2010 WL 2745954, *12 (N.D. Fla. Jul. 9, 2010) (citing with approval a number of cases treating "low stress" work as synonymous with "non-production type of work") (internal citations omitted).[6]

In order to determine whether avoidance of "unusual stress" represents a satisfactory restriction on a particular plaintiff's ability to work, the ALJ must make a highly individualized inquiry that complies with the "function by function assessment" addressing the plaintiff's work related mental activities set forth in SSR 96-8p. In Mr. Cannon's case, the Court is not satisfied the ALJ made the function by function assessment that addresses Cannon's ability to perform work related activities. Within this district, a number of courts have found the limitation to "low stress" jobs or the avoidance of "unusual stress" was sufficient restriction for a plaintiff who had only mild difficulties within the four functional

---

[6]Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

areas or only a non-severe mental impairment. *See, e.g., Baker v. Astrue*, No. 5:09-cv-480-FtM-SPC, 2011 WL 611663 (M.D. Fla. Feb. 11, 2011) (finding limitation to simple repetitive tasks in a low stress environment adequately accounted for the plaintiff's non-severe mental impairments that resulted in mild limitations in the broad areas of functioning set out in the Regulations); *Johnson v. Astrue,* No. 3:09-cv-492-J-JRK, 2010 WL 3894098 (M.D. Fla. Sept. 30, 2010) (finding no error with the ALJ's determination that limited the plaintiff to "avoid unusual stress" in light of the plaintiff's non-severe mental impairment and mild difficulties in the four functional areas, but reversing the ALJ on other grounds)*; Stout v. Astrue*, No. 3:07-cv-987-J-TEM, 2009 WL 890388 (M.D. Fla. Mar. 31, 2009) (finding the ALJ's hypothetical question for the individual to avoid work with unusual stress adequately addressed the plaintiff's severe affective disorder that caused only mild to moderate difficulties in concentration, persistence or pace). However, this Court previously has found a restriction to "low stress" work, or the avoidance of "unusual stress," was insufficient to account for a plaintiff's *moderate* limitations within the four broad functional areas. *See Berry v. Astrue,* No. 3:09-cv-885-J-TEM, 2011 WL 1135091 (M.D. Fla. Mar. 28, 2011) (finding the need to avoid unusual stress did not adequately represent the plaintiff's moderate difficulties in social functioning that resulted from the plaintiff's severe affective disorder); *also see Brunson v. Astrue*, — F.Supp. 2d — ,No. 3:09-cv-984-J-MCR, 2011 WL 839366 (M.D. Fla. Mar. 7, 2011) (finding limiting the plaintiff to unskilled jobs without unusual stress did not address the impact of the plaintiff's moderate limitations in concentration, persistence, or pace on his ability to perform work-related activities).

      In this case, ALJ Droker ultimately found Cannon had the RFC to perform a range of light work, with additional restrictions (Tr. 20). The ALJ stated Plaintiff "must be able to

shift positions at will from sitting and standing/walking.  He must avoid ladders or unprotected heights and operation of heavy moving machinery.  He can occasionally bend, crouch, kneel, stoop, squat, or crawl.  He must avoid unusual stress." (Tr. 20.)  Thus, the avoidance of unusual stress is the only restriction related to Cannon's mental impairment.

When, as in this case, the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

At the May 26, 2009 administrative hearing, vocational expert Donna Mancini testified (Tr. 44-49).  The VE was present throughout the entire hearing, heard the Plaintiff's testimony, was sworn in prior to giving testimony and testified herself that she had reviewed the record made available to her prior to the hearing (Tr. 27, 29, 45).  ALJ Droker asked the VE Mancini to:

> Assume I find that the claimant is 42 years old, has a high school education.  Assume further I find that he can only perform light work and is further limited by the following exertional and non-exertional impairments. He needs a sit/stand option.  He needs to avoid ladders or unprotected heights. He needs to avoid the operation of heavy moving machinery.  He needs to avoid unusual stress.  He can only occasionally bend, crouch, kneel, stoop, squat and crawl.

(Tr. 46.)  In response to this hypothetical question, the VE testified Plaintiff would be unable

to perform an of his past relevant work, which she earlier had identified as a construction worker II and a carpenter helper (Tr. 45-46).

The ALJ modified the hypothetical question to assume entry level work in which the claimant had no skills or semi-skills at all, but was the age previously described and had the same work experience and education previously described (Tr. 46). The VE was directed to assume further the claimant could perform light work and had the same exertional and non-exertional limitations originally described (Tr. 46). Under this scenario, the VE identified the light exertional jobs of silver wrapper and ticket seller, and the sedentary exertional jobs of surveillance system monitor and para-mutual ticket checker as work the claimant could perform (Tr. 46-47). The VE further testified the identified jobs would normally have a ten or fifteen minute break in the morning and in the afternoon, and a thirty or a sixty minute break at noontime (Tr. 47-48).

Although the ALJ's hypothetical questions to the VE included all of the limitations found in the ALJ's assessment of Plaintiff's RFC (Tr. 20, 46-48), it is not the consistency between the hypothetical questions and the RFC assessment that Plaintiff disputes. Plaintiff argues the ALJ's hypothetical questions were insufficient to account for Plaintiff's "chronic pain limitations, anxiety and depression" (Doc. #17 at 19). As the Court has noted, "when the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision." *Brunson v. Astrue*, 2011 WL 839366, at *10 (quoting *Corbitt v. Astrue*, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008)). In *Brunson*, the ALJ stated the hypothetical person needed to "avoid unusual stress" and needed "simple tasks." *Id.* at *11. In that case, the Court found the ALJ did not explicitly

or implicitly account for the plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  *Id.*

This is a fact specific inquiry in which the medical evidence may or may not demonstrate whether generic limitations, such as to unskilled work or to jobs without unusual stress,  for example, may sufficiently account for the plaintiff's mental impairments. *Id.* However, it is for the Commissioner, not the courts, to weigh the medical evidence and make the necessary findings.  See *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (stating a court may not decide facts anew, may not reweigh the evidence, and may not substitute its own judgment for that of the Commissioner) (internal citation omitted).

In this case, as in *Winschel v. Comm'r of Social Security,* 631 F.3d 1176 (11th Cir. 2011), the ALJ did not indicate whether medical evidence supported finding Plaintiff could perform basic work activities in spite of the moderate limitation in an area of functioning, nor did the ALJ implicitly account for the limitation in his hypothetical to the vocational expert by instructing the VE to fully credit any particular findings or medical evidence related to Plaintiff's severe mental impairment.  See *Winschel*, 631 F.3d at 1181.[7]  Thus, ALJ Droker failed to make findings sufficient for the Court to ascertain whether the mental limitation of avoiding unusual stress, as stated in the RFC and the hypothetical questions,

---

[7]In the recent case of *Winschel v. Commissioner of Social Security*, the Eleventh Circuit weighed in on the adequacy of hypothetical questions posed by administrative law judges to vocational experts when the Psychiatric Review Technique analysis reveals claimants have moderate limitations in an area of functioning.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011).  In *Winschel*, the court found limitations to simple, routine tasks or to unskilled work would not, standing alone, typically be sufficient to account for a plaintiff's moderate limitations in concentration, persistence or pace.  *Id.* at 1180.

adequately encompassed Plaintiff's severe mental impairment.[8] Therefore, the Court does not find the ALJ's decision is fully supported by substantial evidence and remand is necessary to correct this flaw.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g). The case is **REMANDED** for additional proceedings consistent with this Order and Opinion. On remand, the Commissioner is instructed to:(1) reassess Plaintiff's residual functional capacity in light of this Order and Opinion; (2) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and, (3) conduct any other proceedings deemed appropriate.

Plaintiff Cannon is cautioned, however, that this opinion does not suggest he is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Cannon is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

**Directions as to Judgment**

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days**

---

[8]The Court recognizes that the *Winschel* opinion was issued after the parties filed their briefs in this case; however, it is a published opinion and therefore controlling law in the Eleventh Circuit.

of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).

This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida this  15th  day of September, 2011.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record